Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and Kinser, JJ., and Poff, Senior Justice

CHARLES F. MAY

OPINION BY JUSTICE LEROY R. HASSELL, SR.

v. Record No. 991770          April 21, 2000

LINDA GRANDY, ET AL.

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
George E. Honts, III, Judge

In this appeal, we consider whether the evidence is sufficient to support the circuit court's order granting a natural mother's petition to change the surname of her minor child.

The following undisputed facts were adduced during an ore tenus hearing. Linda Grandy is the natural mother of Elizabeth Nicole May, who was born on January 14, 1987. Charles F. May is Elizabeth's natural father.

Elizabeth lives with her mother, her stepfather whose surname is Grandy, and other family members. Elizabeth testified "that she had been asking her mom to have her name changed to the name of Grandy for the last four . . . years." Elizabeth stated that she would feel more a part of her family with whom she resided if she had the last name of Grandy.

Linda Grandy testified "that at no time had she ever hindered or obstructed Charles May from seeing his daughter, and in fact had encouraged a healthy relationship between the two." Charles May agreed that he had "always received a

congenial response to requests of visitation." Elizabeth testified that "her father does not call or visit her, and that it had been 2 1/2 years since the last visit." When Charles May was asked "why he had not exercised his right of visitation . . . he stated it was due to his job schedule and traveling."

The evidence was uncontroverted that Charles May had not mistreated or abused Elizabeth, nor had he committed any act of misconduct toward her. He also testified that he had "never abandoned his daughter." Charles May "did not want his child's name changed to that of the step-father (Grandy)."

Following the hearing, the circuit court entered an order concluding that Elizabeth's best interest would be served by granting the mother's petition. Accordingly, the child's surname was changed to Grandy.

On appeal, the father contends that the circuit court erred in ordering a change of Elizabeth's name because "as the natural father [he] had committed no wrong against the child." The father also asserts that the circuit court erred "in granting the name change on the basis of inconvenience or that the child might be embarrassed to have a different last name than her mother." We disagree with the father's contentions.

As relevant to this proceeding, Code § 8.01-217 provides that a parent desiring to change a child's name may apply to

the appropriate circuit court "which shall consider such application if it finds that good cause exists therefor under the circumstances alleged."  Code § 8.01-217 also states in relevant part:

> "In case of a minor who has both parents living, the parent who does not join in the application shall be served with reasonable notice of the application and, should such parent object to the change of name, a hearing shall be held to determine whether the change of name is in the best interest of the minor."

Code § 8.01-217 requires that the petitioning parent prove by satisfactory evidence that the change of name is in the child's best interest.  Rowland v. Shurbutt, 259 Va. 305, 308, ___ S.E.2d ___, ___ (2000); Beyah v. Shelton, 231 Va. 432, 434, 344 S.E.2d 909, 911 (1986); Flowers v. Cain, 218 Va. 234, 237, 237 S.E.2d 111, 113 (1977).

In Flowers, 218 Va. at 236-37, 237 S.E.2d at 113, we discussed the factors that we consider when applying the best interest test:

> "Generally, a [name] change will be ordered only if (1) the father has abandoned the natural ties ordinarily existing between parent and child, (2) the father has engaged in misconduct sufficient to embarrass the child in the continued use of the father's name, (3) the child otherwise will suffer substantial detriment by continuing to bear the father's name, or (4) the child is of sufficient age and discretion to make an intelligent choice and he desires that his name be changed.  But, 'a change of name will not be authorized against the father's objection . . . merely to save the mother and child

3

> minor inconvenience or embarrassment.' [Citations
> omitted]."

Accord <u>Beyah</u>, 231 Va. at 435, 344 S.E.2d at 911.

Viewing the evidence in the light most favorable to the mother, the prevailing party below, we hold that the evidence is sufficient to support the circuit court's holding that the change of name is in the child's best interest. Even though Charles May had not abandoned his child, the circuit court was certainly entitled to place great weight upon the fact that he "does not call or visit her, and that it had been 2 1/2 years since the last visit," even though the mother sought to encourage "a healthy relationship" between Charles May and his daughter. Indeed, the father admitted that with the exception of one occasion, the mother "had never hindered or stopped him from seeing his daughter." The circuit court also considered other factors, including Elizabeth's desire to change her name, her age, and her level of maturity.

We recognize that a circuit court cannot change a child's name because of minor inconvenience or minor embarrassment. We also recognize that a circuit court must not change a child's name over the objection of the natural father solely because a child desires to bear that child's stepfather's surname. Rather, Code § 8.01-217 requires that a parent, who seeks to change a child's surname over the objection of the

4

other parent, demonstrate with satisfactory evidence that the requested name change is in the child's best interest. The mother demonstrated with satisfactory evidence that the name change was in the best interest of Elizabeth and, consequently, we hold that the circuit court did not abuse its discretion in granting the name change. Accordingly, we will affirm the order granting the name change.

Affirmed.

JUSTICE KOONTZ, dissenting.

I cannot join in the majority opinion in this case. In my view, the record does not support the majority's holding that the mother here met her burden, under Code § 8.01-217, to demonstrate with satisfactory evidence that the name change is in the best interest of her child and, consequently, that the trial court did not abuse its discretion in granting the name change over the objection of the child's natural father. Accordingly, I respectfully dissent.

The result reached in this particular case is not, however, the primary reason that prompts my dissent. Rather, I am concerned that the majority opinion will give a degree of credence to assertions in the trial courts in future factually similar cases that this Court no longer strictly adheres to the essential thrust of our prior decisions first in Flowers v. Cain, 218 Va. 234, 237 S.E.2d 111 (1977), and later in

5

<u>Beyah v. Shelton</u>, 231 Va. 432, 344 S.E.2d 909 (1986). Until today, those decisions have stood for the simple proposition that absent "substantial reasons" to the contrary, it is in the best interest of a child to have the natural father's surname rather than stepfather's surname. <u>Flowers</u>, 218 Va. at 236, 237 S.E.2d at 113; <u>Beyah</u>, 231 Va. at 434-35, 344 S.E.2d at 911.

Regrettably, the factual background in which this case arose in the trial court, as accurately related in the majority's factual recitation, is an all too familiar one. More regrettably, similar factual scenarios will undoubtedly occur in the future involving different parties and result in a petition in other cases by a mother to change the surname of her child from a prior marriage to the surname of the mother's current husband. It is because these circumstances arise so frequently that we have required more than minor inconvenience or embarrassment to the mother and child to authorize a change in the surname of the child over the objection of the natural father. The consistency of that requirement avoids meritless litigation and needless emotional and financial strain upon divorced parents and their children.

In the present case, however, the majority opinion appears to lower the bar. It is not readily apparent that substantial reasons were established to authorize the name

6

change of the child.  The child's expression that "she would feel more a part of her family with whom she resided if she had the last name of [her stepfather]" is not a substantial reason to authorize the name change.  Indeed, the majority's primary focus is upon the father's failure to call or visit the child for "2 1/2 years since the last visit" and it permits the trial court "to place great weight" upon that fact in determining the best interest of the child.  Make no mistake; I do not defend this failure of the father regardless of "his job schedule and traveling" upon which the father attempts to justify the failure to have regular contact and visitation with his child.  However, standing alone that failure does not constitute a substantial reason, in light of all of the circumstances of this case, to authorize the name change of his child over his objection.  The father has not "abandoned his daughter."

Nevertheless, I dissent in this case because we are not told by the majority whether the same result would obtain whether a father fails to call or visit his child for a period of one year, six months, three months, or even one month although such periods of parental absence surely reflect less than what one would expect from a proper father concerned with the best interest of his child.  Thus, in my view, to permit "great weight" to be given to the father's failure to maintain

more appropriate visitation with his child is more in the nature of a punitive reaction to the father's conduct than an appropriate means to determine whether such conduct amounts to a substantial reason to conclude that a name change is in the best interest of the child. Moreover, such an approach to a determination of the best interest of a child in these cases clouds the clear import of our decisions in Flowers and Beyah and in so doing creates uncertainty where there was certainty in the rights of parents in these regrettable circumstances.

For all these reasons, I would reverse the judgment of the trial court.